IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Richard T., | ) |
|     Plaintiff, | ) ) ) ) Case No.: 20-cv-50324 |
| v. | ) ) Magistrate Judge Margaret J. Schneider |
| Kilolo Kijakazi, Commissioner of Social Security,[1] | ) ) ) ) |
|     Defendant. | ) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff, Richard T., seeks review of the final decision of the Commissioner of the Social Security Administration denying his disability benefits. The parties have filed cross motions for summary judgment [22], [29]. For the reasons set forth below, Plaintiff's motion for summary judgment [22] is denied and the Commissioner's motion for summary judgment [29], is granted. The final decision of the Commissioner denying benefits is affirmed.

**BACKGROUND**

A. Procedural History

On May 4, 2017, Richard T. ("Plaintiff") filed for disability and disability insurance benefits and supplemental security income. R. 103. These applications alleged a disability beginning on March 7, 2017. *Id.* The Social Security Administration ("Commissioner") denied his applications on August 23, 2017, and upon reconsideration on February 2, 2018. *Id*. Plaintiff filed a written request for a hearing on February 28, 2018. *Id.* On May 31, 2019, a hearing was held by Administrative Law Judge ("ALJ") Patricia Kendall where Richard T. appeared and testified. Plaintiff was represented by counsel. *Id.* Ashok G. Jilhewar, M.D., an impartial medical expert, and Susan A. Entenberg, an impartial vocational expert, also appeared and testified. *Id*.

On September 30, 2019, the ALJ issued her written opinion denying Plaintiff's claims for disability, disability insurance benefits, and supplemental security income. R. 103-22. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-6. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [9]. Now before the Court are Plaintiff's motion for summary judgment [22] and the Commissioner's cross-motion for summary judgment and response to Plaintiff's motion for summary judgment [29]. Plaintiff did not file a reply brief.

---

[1] Kilolo Kijakazi has been substituted for Andrew Saul. Fed. R. Civ. P. 25(d).

1

B. The ALJ's Decision

In her ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not been engaging in substantial gainful activity since the alleged onset date of March 7, 2017. R. 105. At step two, the ALJ found that Plaintiff had the following severe impairments: seizure disorder; status post tibia fracture with open reduction and internal fixation (ORIF) and rod placement; and marijuana use. *Id*. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination or impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 106.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work but with the following limitations: occasional operation of foot controls with left foot; no climbing ladders, ropes, or scaffolds; occasionally climbing ramps or stairs; occasionally balance, crouch, kneel, or crawl; and avoid all exposure to use of dangerous moving machinery and unprotected heights. R. 107. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 120. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including hotel housekeeper, cashier, and sales attendant. R. 121. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from March 7, 2017, through the date of decision, September 30, 2019. *Id*.

## STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019)). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility. [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v.*

*Saul*, 955 F.3d 583, 587 (7th Cir. 2020). Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citations and quotations omitted). *See also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

In his motion, Plaintiff argues that the ALJ's RFC failed to account for Plaintiff's deficits in cognition and memory issues; specifically, that the RFC did not include any mental restrictions. The Court finds that the ALJ's determinations were supported by substantial evidence. Therefore, the decision is affirmed.

In assessing a claimant's RFC, the ALJ is required to consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). In assessing a claimant's mental abilities, the ALJ first "assess[es] the nature and extent of [the claimant's] mental limitations and restrictions and then determine[s] [claimant's] residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work and other work." *Id*. at § 404.1545(c). *See Craft v. Astrue*, 539 F.3d 668, 675 (7th Cir. 2008) (reversible error where ALJ "gave short shrift to potential limitations caused by [claimant's] mental impairments.").

In support of his argument that the ALJ's RFC fails to include any mental restrictions, Plaintiff first takes issue with the assessment of consulting psychologist Mark Langgut, Ph.D. The ALJ noted that there were no indications of memory issues during Dr. Langgut's evaluation of Plaintiff, and his memory skills "clearly were intact on examination," as well as "no diagnoses of any cognitive impairment." R. 106. However, Plaintiff notes that upon his July 2017 examination, he identified "Clinton" as the most recent past president. Dr. Langgut's report also stated that Plaintiff had "limited insight into his own situation." R. 387. Plaintiff objects that neither of these findings is mentioned in the ALJ's opinion. The ALJ observed that Dr. Langgut's report stated that Plaintiff uses marijuana for pain, is able to perform most activities of daily living, has limited social relationships since he quit drinking, has a good relationship with his mother, and exhibited an unremarkable mental examination. Dr. Langgut found Plaintiff to be cooperative and friendly, with no signs or symptoms of depression, with normal thoughts and activity level, intact memory skills, adequate computational skills, clear consciousness, was oriented times four, and was able to shift topics without difficulty. R. 113. Considering all of Dr. Langgut's findings and conclusions, the ALJ opined that Plaintiff did not have a severe mental impairment. R 119.

Plaintiff also argues that the ALJ failed to account for Plaintiff's testimony as well as the reports from Plaintiff's mother and sister regarding Plaintiff's mental impairments. First Plaintiff notes that his own testimony during the hearing was contradictory and confusion. Plaintiff points out that he was confused during some questioning and exhibited memory issues. He argues this was also apparent during his testimony regarding his past work. [22], p. 8. Additionally, Plaintiff notes that it is his very inability to remember that makes some of what he has said in the past inherently unreliable. Plaintiff further argues his mother and sister both reported that he suffers

from memory issues, "forgetting large spans of time" as well as day-to-day occurrences. *Id*. Plaintiff's position is that the ALJ's failure to acknowledge his mental deficits through Plaintiff's testimony and the reports of his family, undermined the ALJ's conclusions in the opinion.

Turning to the RFC assessment in the ALJ's opinion, the ALJ first noted the two-step process to make the proper determination. First, the ALJ is required to determine whether there is an underlying medically determinable physical or mental impairment; and second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. 20 C.F.R. §404.1529.

The ALJ began her RFC assessment with a summary of Plaintiff's testimony at the hearing. In two-and-a-half pages, the ALJ recounted Plaintiff's testimony regarding his work history, including specific work requirements as a forklift driver and machine feeder, as well as his recent limitations in completing necessary work tasks. R. 107-08. Next, the ALJ summarized Plaintiff's testimony as to his physical and mental health history, including medication (Keppra) for seizure activity and disorder, symptoms of seizure disorder, limitations due to fatigue and pain, especially in his left lower extremity. Plaintiff further recounted past alcohol use and abuse, episodes of seizure activity while with family and friends, and limits on his balance and coordination. R. 108-10. The RFC analysis also included Plaintiff's testimony regarding his activities of daily living – all of which he testified to experiencing difficulty with, such as mowing his grass, walking, riding his bicycle, going to the store, and watching television. R.108-09.

The ALJ next summarized Plaintiff's medical records starting in March of 2017 through March of 2019. The medical history summary is extensive and includes the following. In March of 2017, Plaintiff was hospitalized due to new onset of seizure disorder. An EEG was determined to be normal. Plaintiff was prescribed Keppra and advised to stop using marijuana. An MRI showed no acute intracranial findings and very mild vessel white matter disease with no cerebral atrophy. A month later, neurologist John Collins, M.D., noted that Plaintiff experienced no seizures since taking Keppra. Plaintiff was counseled at that time to reduce his caffeine intact, which would decrease his tremor. Dr. Collins noted that Plaintiff was doing well. In May of 2017, Plaintiff saw family practitioner Michael Rivera, M.D. Plaintiff was concerned about memory problems, feeling run down, and experiencing pain in his lower extremities. A physical examination at that time showed good foot flexion and extension. Dr. Rivera prescribed Plaintiff with Gabapentin for pain.

Plaintiff participated in the consultative psychological examination with Dr. Langgut, as noted above, in July of 2017. In the ALJ's RFC assessment, she specifically noted that during this examination, Plaintiff reported "a little bit of marijuana for pain." Plaintiff also reported to Dr. Langgut that he was able to perform most activities of daily living, had a good relationship with his mother, but had limited other social relationships due to not drinking alcohol. Dr. Langgut reported that Plaintiff's mental status exam was unremarkable – Plaintiff presented friendly and cooperative, with no signs or symptoms of depression his emotions were within normal limits. Dr. Langgut noted that Plaintiff "provided evidence of intact memory skills," "adequate computational skills," clear consciousness, oriented to time, location, place, and person, and shifted topic without difficulty. R. 113/386-87.

As also included in the RFC analysis, Plaintiff further underwent two consultative internist

4

examinations in August and December of 2017. Relevantly, it was reported at these examinations that Plaintiff was able to recall current and past presidents, was able to perform serial sevens, and answer questions appropriately. R. 114. One examining doctor further reported that Plaintiff had been previously diagnosed with seizure disorder, alcohol abuse, tension headaches, and cognitive impairment, most likely due to alcohol use. *Id*.

In January of 2018, Plaintiff saw Dr. Collins again. Dr. Collins added Vimpat twice a day to Plaintiff's medication regimen for Plaintiff's reported increase in seizure activity. Plaintiff saw Dr. Collins a month later where Dr. Collins noted no new seizure episodes. Plaintiff's physical examination was unremarkable. R. 110.

In March of 2018, Plaintiff was seen at KSB Medical Group. Plaintiff reported to past seizures but was overall feeling okay with no major concerns. The RFC assessment noted that Plaintiff was diagnosed with a seizure disorder at this visit, which was well-controlled with medication. R. 112. A progress note at that time indicated Plaintiff was to start physical therapy; however, Plaintiff's medical records contained no information on a physical therapy program. R. 113.

The ALJ's RFC analysis further noted that in September of 2018, Plaintiff was seen at the Illinois Neurological Institute for follow-up for seizure disorder. At that time, Plaintiff reported that his last seizure was in June of 2018. Plaintiff further reported a recent episode where he was out with a friend and could not remember 6 to 8 hours of that day (but that his friend believed he was acting normal). Plaintiff also reported smoking marijuana daily. A neurological exam, performed by neurologist Tariq Gheith, M.D., noted intact short-term memory, intact attention, orientation to date, location, and person, normal fluency, comprehension, repetition and naming, fluent speech, and "impaired fund of knowledge" (according to the medical records, it appeared Plaintiff did not know if the President was "Bush" or "Obama"). His examination as to cranial nerves, motor exam, sensory, and coordination were all intact. As to Plaintiff's gait, Dr. Gheith reported Romberg with increased sway and an ambulation with a slight limp. At that examination, Plaintiff reported he had stopped taking the Vimpat and was feeling better without it. Dr. Gheith noted that Plaintiff was a "poor historian" and appeared to be having seizures at night. He ordered a sleep-deprived EEG, increased Plaintiff's Keppra prescription, and advised Plaintiff to keep a seizure diary and limit his marijuana use. Dr. Gheith also stopped Plaintiff's Vimpat prescription. A couple of weeks later, Plaintiff's EEG was normal, according to Dr. Gheith. In November of 2018, Dr. Gheith reported that Plaintiff had been seizure- free for a month. R. 111. In February of 2019, Plaintiff was seen again by Dr. Gheith. At that time, Plaintiff reported he felt better and had not had a seizure since November of 2018. He further reported he continued to smoke marijuana 3 times a day and felt his memory was still bad. R. 112.

In March of 2019, Plaintiff saw family practitioner John Plescia, M.D. The ALJ's RFC explanation summarized Plaintiff's visit with Dr. Plescia, including Plaintiff's recitation of his health history, including his sleep habits, headaches, and occasional dizziness. Plaintiff also reported to Dr. Plescia at that time that he could walk 2 miles, but experienced some incoordination and walked slowly. He also reported experiencing anxiety, mood swings, and concentration problems. As to Plaintiff's reported memory problems, Dr. Plescia opined they may be related to Plaintiff's history of seizures and regular marijuana use. Plaintiff's physical examination at that

5

time was unremarkable. A March 2019 treatment note from Katherine Shaw Bethea Hospital indicated that Plaintiff reported smoking marijuana several times a day. R. 113.

The ALJ's review of Plaintiff's medical history spans over 5 pages of the RFC determination. The Court finds it very thorough.

Next, the ALJ's RFC analysis included a comprehensive summary of the testimony of medical expert Dr. Jilhewar, a board-certified internist. Regarding mental impairments, Dr. Jilhewar testified that Plaintiff has a seizure disorder. The ALJ's opinion noted that Dr. Jilhewar testified that despite being repeatedly told by the neurologist to cease marijuana use, the medical records showed that there was no period of time where Plaintiff was not using marijuana. He testified that marijuana use increases the frequency of seizures. Dr. Jilhewar also testified that since Plaintiff's most recent visit with the neurologist, approximately 15 months earlier, Plaintiff experienced no seizures. The ALJ's RFC analysis includes Dr. Jilhewar's review of Plaintiff's medical history and records – relevantly, his neurology visits and follow-ups. Dr. Jilhewar testified that he believed Plaintiff's seizures to be general tonic clonic and controlled even with marijuana use. Regarding his review of Plaintiff's records regarding his lower left extremity problems, Dr. Jilhewar opined that Plaintiff would be limited to sedentary residual functional capacity. However, he testified that this RFC would be "speculation." R. 116. Additionally, when asked if Plaintiff's Romberg with sway and slight limp would support sedentary residual functional capacity, Dr. Jilhewar testified that Plaintiff could do "light work" with a slight limp. R. 117.

While the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, she also found some of Plaintiff's statements incongruous. R. 117. First, the ALJ found Plaintiff's recitation of his work history not entirely candid. While Plaintiff testified his work was "light" to "medium," the ALJ found this inconsistent with the nature of his work in labor construction. *Id*. Second, the ALJ recited that while the medical expert put Plaintiff's RFC at sedentary work, the ALJ found that Plaintiff's work history and testimony did not convey a limitation to sedentary work. The ALJ stated: "[Plaintiff's] testimony was difficult to credit fully, due to inconsistencies, but on the whole, residuals from broken leg did not prevent him from working at light to medium jobs and he only sought disability after seizures, which are now controlled with Keppra." *Id*. She further noted that Plaintiff's "twitching" and "zoning out" episodes could be caused by marijuana use, according to the medical expert. In summary, the ALJ found that the record overall supported that Plaintiff was capable of more than sedentary work. R. 119. Nevertheless, the ALJ did find that even though Plaintiff's seizures are controlled with Keppra, considering seizure precautions, Plaintiff should avoid all exposure to dangerous moving machinery and unprotected heights. Finally, the ALJ found the opinions of the Disability Determination Services ("DDS") psychologists persuasive. *Id*. In July of 2017, DDS psychologist Melanie Nichols, Ph.D. opined that there was insufficient evidence to assess Plaintiff's substance addiction disorder. In December of 2017, DDS psychologist Lionel Hudspeth, Ph.D. opined that Plaintiff had no mental medically determinable impairment. The ALJ found these opinions "reasonably viable" and "consistent with other cumulative evidence of record developed after their determination." *Id*.

Moreover, the ALJ considered the conclusions of Dr. Langgut and the third-party reports of Plaintiff's mother and sister. As noted above, the ALJ gave limited persuasive value to the opinion of Dr. Langgut based, in part, on the fact that his limitation of Plaintiff to sedentary work

failed to find support in the medical record. As to the third-party reports, the ALJ found these reports – noting Plaintiff's memory issues since having seizures – not persuasive, finding that Plaintiff's alleged memory issues since experiencing seizures did not show up on mental status examinations. R. 119. The ALJ concluded, in consideration of Plaintiff's medical evidence of record and his work and daily activities, that Plaintiff is capable of performing light work.

The Court is not persuaded that the ALJ failed to properly consider Plaintiff's deficits in cognition and memory in her RFC assessment. Substantial evidence supports the ALJ's determination that Plaintiff is able to perform light work. *See Pepper v. Colvin*, 712 F.3d 351, 361-63 (7th Cir. 2013) (substantial evidence supported ALJ determination that plaintiff had the RFC to perform light work where ALJ adequately discussed the issues). The ALJ, in more than adequate detail, set forth Plaintiff's testimony, the medical record – including Plaintiff's treating physicians, Dr. Collins, Dr. Gheith, and Dr. Plescia, Dr. Rivera, consultative psychological examiner, and consultative internist examiners, testimony of medical expert, DDS medical and psychological consultants, and third-party function reports. The ALJ formed the basis of the RFC determination based on all of the evidence. Plaintiff takes issue, in particular, with the ALJ's assessment of Dr. Langgut's report. Plaintiff identifies Dr. Langgut's conclusions as "problematic" because Dr. Langgut indicated in his report that Plaintiff's memory skills were "intact", yet Plaintiff identified the most recent past president (in 2017) as "Clinton," as well as acknowledged that Plaintiff had "limited insight into his own situation." [22], pp. 7-8. The Court's review of the record shows that, despite misidentifying the most recent past president, Plaintiff was able to recall five digits forward and three digits in reverse order, correctly recalled the previous day's weather, what he had eaten for dinner the evening before, directions to the testing site, the current (in 2017) U.S. President as Donald Trump, and the first president as Washington. R. 387.[2] Also, while Dr. Langgut noted that Plaintiff had "limited insight into his own situation," Dr. Langgut also advised that Plaintiff had flexibility of thought, shifted topics without difficulty, no delusions or obsessive ideas, and a clear consciousness and unimpaired orientation. Dr. Langgut further opined that Plaintiff's thought processes were slow to normal, with average coherence and moderately increased suggestibility. *Id*. The ALJ provided her ruling after consideration of all of Dr. Langgut's "findings and conclusions." R. 119. Additionally, the ALJ did not ignore record notations of cognitive deficits found in Plaintiff's medical record. For example, the ALJ's opinion held "[t]here are some memory issues noted in the record." R. 105. "Although the ALJ may not ignore an entire line of evidence that supports a finding of disability, the ALJ is not required to mention every piece of evidence." *Combs v. Kijakazi*, No. 22-2381, 2023 WL 3712686, at * 7-8 (7th Cir. May 30, 2023).

Finally, Plaintiff argues the ALJ failed to properly acknowledge the unreliability of Plaintiff's statements about his seizures and their frequency. Specifically, Plaintiff suggests that his own testimony of the infrequency of his seizures should not have been considered by the ALJ since Plaintiff himself cannot adequately remember. Plaintiff cites to *Kaminski v. Berryhill*, 894 F.3d 870 (7th Cir. 2018), which held in part that claimant, with left frontal-lobe injury (and subsequent seizures), was unable to recognize his limitations and, therefore, his statements about his health were not reliable. *Id*. at 874. Plaintiff also argues that the ALJ should have made mention of Plaintiff's inclination to be "highly avoidant of treatment." While the Court does not disagree

---

[2] As noted above, Dr. Gheith found Plaintiff's "fund of knowledge" to be "impaired," in regard to his ability to identify the prior president. R. 472.

with Plaintiff's argument that a seizure condition could cause unreliable memory, or that a claimant's avoidance of treatment should be a factor for the ALJ to consider in her ruling, neither of these positions are especially implicated in this ALJ's opinion. Plaintiff reported some infrequency of seizure activity over the years – which is, as noted, supported by the medical record. Plaintiff further testified at the hearing that he still experiences "twitching" and "shaking." He also testified to some coordination problems that he did not have prior to his seizure diagnosis. He testified further that he takes his Keppra medication regularly. This medication compliance is consistent with the medical records in this case and consistent with the medical opinions throughout, that Plaintiff's seizure disorder is under control while on Keppra. Moreover, the Court agrees with the Commissioner that the argument that Plaintiff may be experiencing more seizures than he is able to report, is pure speculation. Additionally, the EEG and MRI reports contained in Plaintiff's medical records were assessed as within normal range. The Court is not persuaded by this line of argument.

The Court finds that the ALJ's opinion is supported by substantial evidence. The ALJ's RFC determination was thorough and fair. Plaintiff's argument that the RFC should have included mental restrictions is unsupported by the record, as found by the ALJ.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [22] is denied and the Commissioner's motion for summary judgment [29], is granted. The final decision of the Commissioner denying benefits is affirmed.

Date: 06/13/2023             ENTER:

_____
United States Magistrate Judge